# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| QUANTUM COMMUNICATIONS LTD<br><br>    Plaintiff,<br><br>v.<br><br>EAGLE FORUM, EAGLE FORUM EDUCATION AND LEGAL DEFENSE FUND, IAN A. NORTHON, ROETZEL AND ANDRESS, LPA, and EDWARD R. MARTIN, JR.<br><br>    Defendants. | **COMPLAINT**<br><br>CASE NO. |

Plaintiff Quantum Communications LTD ("QC"), by counsel, states as follows for its Complaint against Defendants Eagle Forum, Eagle Forum Education and Legal Defense Fund ("EFELDF"), Ian A. Northon ("Northon"), Roetzel and Andress, LPA ("Roetzel"), and Edward R. Martin, Jr. ("Martin"):

1.  This case arises out of an agreement for services requested by, and entered into by Defendants, and their agents and affiliates, for extensive services from QC in which Defendants aggressively utilized the valuable services of QC for approximately 7 months, totaling over $130,000.00, without payment, in breach of

the parties' contract and in unjust enrichment of the Defendants and their affiliated entities and/or individuals.

## PARTIES, JURISDICTION, AND VENUE

2. Quantum Communications LTD is a Pennsylvania Corporation organized and existing under the laws of the Commonwealth of Pennsylvania, with its principal place of business in Harrisburg, Dauphin County, Pennsylvania.

3. Defendant Eagle Forum is a corporation organized under the Illinois General Not for Profit Corporation Act and recognized as a tax-exempt organization pursuant to 26 U.S.C. § 501(c)(4). Eagle Forum has a physical address of 322 State Street, Suite 301, Alton, Illinois, 62002.

4. Defendant Eagle Forum Education and Legal Defense Fund is a corporation organized under the Illinois General Not for Profit Corporation Act and recognized as a tax-exempt organization pursuant to 26 U.S.C. § 501(c)(3). Upon information and belief, Eagle Forum Education and Legal Defense Fund has a physical address in Illinois and another in Missouri. It has a mailing address of P.O. Box 618, Alton, Illinois, 62002 and a physical address of 7800 Bonhomme Avenue, Clayton, Missouri 63105.

5. Upon information and belief, Ian A. Northon is an individual who is a resident and citizen of the State of Michigan, believed to be residing at 8097 Golden

Oak Drive, Georgetown Township, Michigan 49428, who also has a professional residence of 55 Campau Avenue NW, Suite 300, Grand Rapids, Michigan 40503.

6. Upon information and belief, Roetzel and Andress, LPA is a limited partnership organized under the laws of the State of Florida with an address of 850 Park Shore Drive, Trianon Centre, Naples, Florida 34103.

7. Edward R. Martin, Jr., is an individual who is a resident of the State of Missouri with a residence at 1519 Indian Hill Lane, Ballwin, Missouri 63021.

8. This Court has subject matter jurisdiction over this action, pursuant to 28 U.S.C. § 1332, because Quantum Communications is a citizen of a state different than the states in which Defendants are citizens, and the amount in controversy exceeds $75,000.00.

9. Each Defendant has sufficient minimum contacts with Pennsylvania to support the District Court's exercising personal jurisdiction over it in this civil action, including without limitation: Defendants have purposely availed themselves of Pennsylvania's laws and regulation by doing business with Quantum Communications and subjected that business to Pennsylvania law; Defendants have entered into a contract to conduct business with Quantum Communications; and Defendants have sent various communications and documents to Quantum Communications in Harrisburg, Pennsylvania, including the contract in question, in furtherance of their business with Quantum Communications.

10. Venue is proper in the Middle District of Pennsylvania, because it is the situs of the Plaintiff's business and the location where much of the work requests made by the Plaintiffs were received and fulfilled.

**FACTUAL BACKGROUND**

11. Quantum Communications is a public relations and strategic communications firm engaged in the business of providing strategies and solutions to customers seeking to strengthen their image, promote an agenda, or engage in a communications campaign throughout a region, state, or the nation.

12. The defendants utilized QC as a consultant and communications team to promote the achievements of Phyllis Schlafly and the Forums she established to continue her message and views.  As a result, QC entered into an ongoing contractual relationship for the services rendered by QC which are enumerated below.

13. The engagement agreement (the "Agreement") was signed by Ian Northon, of Roetzel & Andress, and Kevin Harley on September 22, 2016, and provided for Kevin Harley ("Harley"), Ed Rollins ("Rollins"), and Charlie Gerow ("Gerow"), the senior members at QC, to render services to assist Roetzel "in their representation of Eagle Forum by providing communication-consulting services to protect and enhance Eagle Forum's reputation."  The agreement also included the EFELDF as a party purchasing/receiving the services of QC.  Following the ordinary

4

course of dealing in this business, the Agreement was executed with Roetzel & Andress, rather than directly with Eagle Forum, to preserve the attorney-client privilege. The Agreement provided for a monthly retainer of $20,000.00 that served as good and valuable consideration in exchange for QC's services. A copy of the Agreement is attached hereto and incorporated herein as Exhibit A.

14. On or about October 13, 2016, Ed Martin ("Martin"), President of the Phyllis Schlafly's Eagle Forum and the Eagle Forum Education and Legal Defense Fund, informed Kevin Harley that Ian Northon was not authorized to sign the Agreement, but that he was authorized and interested in pursuing the services that had been offered, and contractually settled, in the Agreement.

15. Subsequent to that communication, on or before October 21, 2016, Martin agreed, on behalf of Eagle Forum, to the terms of the original Agreement and continued, along with Ian Northon, to direct the services provided by QC. Martin remained fully aware of all services rendered by QC on behalf of Eagle Forum and made no objections to the services provided, nor the invoices for said services, until April 2017.

16. Pursuant to the Agreement, and under the direction of Martin and Ian Northon, QC provided litigation support, as a result of a legal dispute between Schlafly's heirs, throughout October that resulted in consultations and

communications, including conference calls, between QC and Ian Northon, Martin, and Jim Fox of Roetzel & Andress.

17. Pursuant to the Agreement, and under the direction of Martin, throughout November, QC provided proposed statements for Andy Schlafly, developed press releases concerning the litigation, designed a plan to modernize and digitize Phyllis Schlafly's legacy and movement, and created a detailed "strategic communications plan" for continued public relations including the creation of a Phyllis Schlafly video tribute for possible broadcasting and to be utilized for fundraising and promotion by Eagle Forum. The plan was discussed and affirmed in a conference call, on or about November 29, 2016, held between Martin, Rollins, Harley, and Gerow.

18. Pursuant to the Agreement, and under the direction of Martin, throughout December 2016, QC rendered various services to promote Eagle Forum's position within the conservative community, provided litigation support, and researched and storyboarded the video project. QC received video footage and still photos from Eagle Forum's archivist and Martin to be used for the video project, and reviewed and cataloged the same.

19. Pursuant to the Agreement, and under the direction of Martin, QC organized and promoted a reception during the Presidential Inaugural on January 21, 2017. The event entailed substantial preparation by QC, in which they selected a

venue, drafted invitations, made hundreds of phone calls to invitees, and contracted with a professional in D.C. to identify additional guests and organizations to invite to the event. All of this work and expense was conducted with the express knowledge and direction of Martin.

20. Pursuant to the Agreement, and under the direction of Martin, on or about January 26, 2017, Harley, Gerow, and their paid film crew flew to St. Louis for three days to film Eagle Forum's board members and Martin, get a "B-roll" of the Schlafly residence, and the dedication of the Phyllis Schlafly Center.

21. All of the Eagle Forum Board of Directors were fully aware of QC's work, having witnessed much of QC's work and having been personally interviewed on camera by QC for the above described Eagle forum video.

22. Pursuant to the Agreement, and under the direction of Martin, on or about February 2, 2017, QC and their paid film crew traveled to Washington, D.C. to interview Ambassador Faith Whittlesey.

23. On or about February 7, 2017, Martin reassured QC that he would pay the outstanding invoices.

24. Pursuant to the Agreement, and under the direction of Martin, QC developed a digital "DeFund Berkeley" campaign that entailed graphic development, site development, ads, promotions, social media content and further services.

25. Pursuant to the Agreement, weekly phone calls were held between QC officials and Martin to discuss, among other things, additional promotion of Phyllis' legacy at CPAC. In furtherance of this request, QC communicated with CPAC leadership and secured for Phyllis' book to be the only "premium" (gift) at the Reagan Dinner, paid for the delivery of, and specifically distributed 800 copies of the book to each place setting at the dinner, and arranged for Phyllis to be mentioned from the podium at the event.

26. On or about March 10, 2017, QC and Martin orally modified their agreement to allow for a decreased monthly retainer of $10,000.00 for the subsequent months.

27. On or about March 17, 2017, QC sent Martin wiring instructions confirming that QC would be paid in full, and Martin failed to dispute the invoice.

28. On or about March 19, 2017, Martin reassured QC that he was meeting with Eagle Forum officials that week and that they, at that time, would write checks to pay QC in full for all services rendered and invoiced.

29. Pursuant to the Agreement, and under the direction of Martin, on or about March 22, 2017, QC provided additional pleadings review and litigation support and held phone conferences with Martin.

30. Pursuant to the Agreement, and under the direction of Martin, on or about March 23, 2017, QC made phone calls to assist in getting Martin on the

Weyrich lunch agenda, a regularly occurring meeting in Washington, D.C. of conservative leaders.

31. QC repeatedly communicated demands for payment for the valuable services QC provided for approximately 7 months, totaling over $130,000.00, and received several written and oral assurances from Martin that payment would be rendered shortly.

32. On or about April 3, 2017, Martin communicated through email that he was in a fight with his board over the outstanding invoices for QC. He subsequently continued to admit the obligation and apologize for the lack of payment.

33. Each and every month of the contract, QC sent invoices for its services to Martin and the Treasurer John Schlafly. The invoices for October 2016 to January 2017, were also sent to Northon and Roetzel. At no point prior to April of 2017, were any of the invoices questioned or disputed in anyway. In fact, payment was always assured to be forthcoming.

34. On or about April 18, 2017, despite his many prior written and oral assurances of responsibility and impending payment, Martin responded to the regularly-occurring invoice and, for the first time, avoided the obligation to pay the invoices by asserting that the agreement had been "terminated" in October.

## COUNT I
### (Breach of Contract)

35. The allegations contained in the foregoing paragraphs are re-alleged and incorporated as if fully set forth herein.

36. For good and valuable consideration, QC executed the Agreement at issue and agreed to adhere to the terms and conditions set forth therein. Defendants subsequently breached their obligations to QC under the Agreement at issue in the manner set forth above and have failed to cure their defaults despite receiving notice of the defaults and having had an opportunity to do so.

37. Defendants breached the contract with QC by failing to make payments that they repeatedly acknowledged were due and owing.

38. Defendants breached the contract with QC by failing to make timely payments on invoices due and owing since 2016.

39. Defendants breached the contract with QC by continuing to use the services and work product created through the expertise and work of the Plaintiff, under the terms of the contract without appropriate payment.

40. As a result of Defendants' default on the Agreement at issue, Defendants are and remain jointly and severally liable to QC for extensive services from QC in which Defendants aggressively utilized the valuable services of QC for approximately 7 months, totaling over $130,000.00.

## COUNT II
### (Unjust Enrichment Plead In The Alternative To Breach Of Contract)

41. The allegations contained in the foregoing paragraphs are re-alleged and incorporated as if fully set forth herein.

42. If the Agreement at issue is determined to be invalid, which is expressly denied, QC conferred a benefit on Defendants by providing over $130,000.00 worth of services to Defendants for about 7 months.

43. Defendants accepted the benefits, and in fact directed QC to provide all the services contained in the foregoing paragraphs.

44. QC did not provide the services gratuitously or as a gift to Defendants.

45. It would be unfair and improper for Defendants to enjoy the benefits of the services provided by QC without proper payment.  Further, Defendants have been unjustly enriched by the refusal to pay for the services rendered by QC to the benefit of the Defendants.

46. As a result of Defendants' refusal to pay for the services rendered by QC, Defendants are jointly and severally liable to QC for total amount due and invoiced to Defendants, totaling $130,000.00.

**WHEREFORE**, Quantum Communications respectfully requests that the Court:

1. For a judgment against Eagle Forum, Eagle Forum Education and Legal Defense Fund, Ian A. Northon, Roetzel and Andress, LPA, John Doe and Edward

R. Martin, Jr. are jointly and severally, for the total amount set forth within the Agreement, totaling $130,000.00.

2.   For a declaratory judgment that QC is rightfully owed the amount set forth within the Agreement, instructing Defendants to issue payment contractually due to Plaintiff.

4.   For an award of pre-judgment and post-judgment interest;

5.   For an award of Plaintiff's attorneys' fees and costs incurred in prosecuting this action as permitted by law;

6.   For a trial by jury as to all issues so triable; and

7.   For such other and further relief as the Court may deem just and proper.

This the 12th day of September, 2017.

**QUANTUM COMMUNICATIONS LTD**

**By Frank G. Fina, Esquire**

*/s/*  
Frank G. Fina  
Bar No.: 71711  
1000 Germantown Pike, Suite D-3  
Plymouth Meeting, Pa 19462  
Phone: (267)-888-7605  
E-mail:  fgflegal@outlook.com