# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| QUANTUM COMMUNICATIONS LTD<br><br>Plaintiff,<br><br>v.<br><br>EAGLE FORUM, EAGLE FORUM EDUCATION AND LEGAL DEFENSE FUND, and EDWARD R. MARTIN, JR.<br><br>Defendants. | CASE NO. 1:17cv1640<br><br>(Honorable Yvette Kane)<br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFF'S RULE 56.1 RESPONSE TO DEFENDANT'S STATEMENT OF MATERIAL FACTS AND STATEMENT OF ADDITIONAL MATERIAL FACTS**

Plaintiff respectfully provides this Response to Defendant's Statement of Material Facts pursuant to Local Rule 56.1 and includes a statement of additional material facts.

## I.

### PLAINTIFF'S RESPONSES TO DEFENDANT'S STATEMENT OF MATERIAL FACTS

1. Quantum was timely informed, on or about October 13, 2016, that the original written contract signed by Ian Northon, purportedly on behalf of

1

Defendant Eagle Forum Education and Legal Defense Fund, was not authorized by Defendants.

**RESPONSE:** Plaintiff does not contest that Defendant Martin informed the Plaintiff, on or about October 13, 2016, that his counsel, Ian Northon, was not authorized to sign the agreement dated September 22, 2016. However, this is different from Defendants' assertion that the contract terms were not "authorized by Defendants". It is a matter of factual dispute whether Marin's claim about Northon's authority was truthful. Nonetheless, Defendant Martin subsequently endorsed and adopted the written agreement dated September 22, 2016. *See,* Plaintiff's Responses and Objections to Defendants' First Requests for Admissions. ¶ 14 (Defendants' Exh. C). *See also,* Exh. A, Deposition Transcript of Charles Gerow on August 23, 2019 ("Gerow Dep. Tr."), 93:12-14; Exh. E, Deposition Transcript of Kevin Harley on August 23, 2019 ("Harley Dep. Tr."), pgs. 7-10.

> Q: To be clear, isn't it accurate that Mr. Martin never disclaimed any terms of that agreement. Instead, disclaimed whether or not Mr. Northon had the authority to enter into that agreement?
> A. That is -- that is better stated. And you are correct. What he disclaimed was Attorney Northon's ability or authority to execute that agreement.
> Q. Which was subsequently cured by Mr. Martin himself?
> A. That's correct.

Exh. A, Gerow Dep. Tr., 99:8-17.

In addition, Ian Northon (of the firm Roetzel & Andress) stated in his declaration that:

> R & A and Ian Northon were at all time periods covered by the events described in the Amended Complaint representing Eagle Forum Education and Legal Defense Fund ("EFELDF") ("the Client"). R&A and Ian Northon signed an agreement with Quantum Communications on September 22, 2016, solely on behalf of their Client and not as a party to the agreement.
> At all time periods covered by the Amended Complaint, R&A and Ian Northon at the time they acted had the authorization and knowledge of the Client.
> Any services of Quantum Communications utilized by R&A and/or Ian Northon were solely on behalf of the Client and not on behalf of R&A and/or Northon.

Exh. B, Declaration of Ian A. Northon, February 12, 2018.

2. There was no written memorialization of the subsequent alleged oral agreement between Quantum and any Defendant.

    **RESPONSE:** It is alleged that Plaintiff has admitted the above alleged fact. This is inaccurate. Plaintiff has always stated that the written agreement dated September 22, 2016 was endorsed and adopted by Defendants. *See Id.* Response to Statement 1, *supra*. *See also,*

> Q. In this case, was there made -- was there any effort made to follow up on this discussion that's described in paragraph 17 with a written agreement?
>
> A. I don't recall that there was, because we already had a written agreement.

Exh. A, Gerow Dep. Tr., 12:10-14.

3. There was no specific agreement as to the scope of work to be performed under the alleged oral agreement.

   **RESPONSE:** The CEO of Quantum Communications dealt directly with Defendant Martin, President of Defendant Eagle Forum Education and Legal Defense Fund, on this issue.

   > Q. And in that conversation, did you discuss specific terms of an engagement?
   >
   > A. We did. We discussed the letter agreement that we had with Ian Northon. And he agreed to continue to work with us under the same terms and conditions that were set forth there, and he wanted some other things done, as well, which we said we would do.
   >
   > Q. And did you discuss any specific terms in that conversation referenced in paragraph 17 such as how much would be owed?
   >
   > A. Yeah. We specifically discussed a $20,000 month retainer.

   Exh. A, Gerow Dep. Tr., 7:8-16.

4. There was no agreement as to whether there was a right to terminate the alleged agreement.

**RESPONSE:** Plaintiff does not dispute that the agreement between the parties did not have a specific provision pertaining to termination of the agreement. Plaintiff does dispute that this is a material fact.

5. There was no agreement as to when work product would be delivered under the alleged oral argument.

   **RESPONSE:** Plaintiff does not dispute that the agreement between the parties did not have a specific provision pertaining to when work product would be delivered under the agreement. Plaintiff does dispute that this is a material fact.

6. Quantum typically does not operate based on an oral rather than a written agreement with a client.

   **RESPONSE:** Plaintiff often operates based upon an oral agreement with clients.

   > Q. Have you ever entered into this type of alleged agreement with other clients?
   > A. Sure.
   > Q. Do you typically put the agreement in writing?
   > A. Not always. I would say more often than not. But not always, no. We have several clients that we worked for just recently where we didn't have written agreements.
   > Q. And it's based on a monthly retainer billing?
   > A. Yes.

> Q. Without a written agreement?
> 
> A. Yes.

Exh. A, Gerow Dep. Tr., 10:24 -11:12. *See also, id.* at 11:15 – 12:5.

7. Invoices by Quantum were addressed to the entity "Eagle Forum," not to Defendants Eagle Forum Education & Legal Defense Fund or to Ed Martin.

    **RESPONSE:** The invoices are documents that speak for themselves and they most certainly were addressed and sent to the Defendants. *See,* Exh. D, Exhibits to Deposition of Edward R. Martin, Jr., August 19, 2019, Exhibit 1.

8. Neither Defendant ever received delivery of any finished film or video product from Quantum.

    **RESPONSE:** Plaintiff does not dispute that it never provided the finished film product on the life and legacy of Phyllis Sclafly, for the simple reason that Plaintiff was never paid by Defendants.

    > Q. Okay. In this case, you did not deliver any film product.
    > 
    > A. We didn't get there because Mr. Martin didn't pay us.

    Exh. A, Gerow Dep. Tr., 21:16-19.

9. Quantum never referred any donors to Defendants.

    **RESPONSE:** Plaintiff does not dispute that it did not refer any donors to Defendants. Plaintiff does dispute that this is a material fact, since such an action was not a part of the parties agreement.

> Q. Was any part of the obligation to pay Quantum Communications for their services linked to fundraising or donations to the Legal Defense Fund?
> A. None.
> Q. Was that ever discussed explicitly, implicitly, in any way, shape, or form?
> A. No, it was not.

Exh. A, Gerow Dep. Tr., 98:22-25, 99:1-3.

> Q. Specifically, was there any agreement, separate and apart from the agreement alleged in the 16 Complaint of Quantum Communications that in any way required you or obligated you to fundraise for Mr. Martin or the legal defense fund at CPAC?
> A. No. And, in fact, we specifically set forth to both Mr. Martin and to Mr. Northon that we don't do fundraising. That's simply not our discipline that Quantum Communications engages in.

Exh. A, Gerow Dep. Tr., 90:14-22.

10. Quantum "has never provided itemized invoices to any of the EFELDF Defendants of any actual time spent by QC [Quantum] on behalf EFELDF Defendants."

    **RESPONSE:** Plaintiff does not dispute that it did not provide itemized time invoices to Defendants. Plaintiff does dispute that this is a material fact,

since it was a monthly retainer agreement that had no relationship or requirement to itemize time.

> Q. Well, I just don't mean -- I'm not speaking just in terms of duration, but also in terms of sort of number of hours per week that something would take?
> A. Yeah. I mean generally, our clients don't ask us how many hours, per se, something's going to take. We're not a law firm billing by incremental units. We're billing on a project basis and on a contractual basis.
> Q. Is your position that Ed Martin said he would pay or arrange for the payment of $20,000 per month, regardless of how many hours in a given month you all spent?
> A. Yeah.

Exh. A, Gerow Dep. Tr., 10:11-23.

11. Quantum "has not incurred out-of-pocket expenses, including payments to vendors or travel-related costs, in excess of $25,000 for any work performed on behalf of any of the EFELDF Defendants."

    **RESPONSE:** Plaintiff does not dispute that it did not incur out-of-pocket expenses, in excess of $25,000 in this matter. It did incur in excess of $17,000 in out-of-pocket expenses in this matter. Plaintiff does dispute that this is a material fact.

12. Quantum "does not assert any contractual basis for recovering attorney's fees in this action."

**RESPONSE:** Plaintiff does not assert any contractual basis for recovering attorney's fees in this action. Plaintiff does dispute that this is a material fact.

13. Quantum has not made any meaningful attempts to mitigate damages.

    **RESPONSE:** Plaintiff contends that this is a legal conclusion and not a properly asserted material fact. In addition, CEO Charles Gerow addressed this issue in his deposition.

    > A. But I -- I don't know that there was any opportunity to mitigate damages. What we did was that we ceased to do work when it became very apparent that we were not going to get paid. And we told him that. We told him -- we gave him plenty of warning in that regard and told him that we would be unable to continue to work if we weren't paid. That was after we were promised, numerous times, that we were going to be paid and that we had, in fact, been paid.
    > Q. Were you ever paid?
    > A. No. Not a penny.

    Exh. A, Gerow Dep. Tr., 14:2-12. *See also, id.* at 15:3-8, 17:4-5.

14. Quantum has never alleged or identified any benefit conferred on Defendants which "would be unconscionable" for any of the Defendants to retain.

    **RESPONSE:** Plaintiff contends that this is a legal conclusion and not a properly asserted material fact. In fact, the Defendants received months of work by Plaintiffs and failed to pay over $130,000 due and owing to the

Plaintiff.  In addition, CEO Charles Gerow addressed this issue in his deposition.  Exh. A, Gerow Dep. Tr., pgs. 24-28.

15. Quantum has not alleged or provided any evidence that Defendant Ed Martin contractually obligated himself personally to Quantum, and in fact Quantum specifically alleged that Martin only entered into the alleged contract on behalf of Eagle Forum alone.

**RESPONSE:**  Plaintiff contends that this is a legal conclusion and to the extent that it involves facts, it is an issue of contention for the ultimate determination of the fact finder.  In addition, CEO Charles Gerow addressed this issue in his deposition.

> Q. Let me ask you why you're suing Ed Martin personally? Now I understand Ed Martin is in all of this and is named. But you have sued him personally.  Do you have any claims against Ed Martin personally?
> A. Yes, to the extent that Mr. Martin believes that the legal defense foundation was not responsible for the payment of our services, he ordered them, directed them, and acknowledged and approved them.

Exh. A, Gerow Dep. Tr., 65:12-22.

16. Quantum has never alleged or provided any evidence that Defendant Ed Martin received any personal benefits or personal enrichment from any work performed by Quantum.

**RESPONSE:** Plaintiff contends that this is a legal conclusion and to the extent that it involves facts, it is an issue of contention for the ultimate determination of the fact finder. All of the work performed by the Plaintiff would have personally benefitted Defendant Martin. The deposition of Mr. Gerow cites numerous efforts and actions that would have personally benefitted Defendant Martin. *See i.e.,* Exh. A, Gerow Dep. Tr., 22:3-16, 20:5-25, pgs. 29-30, 73-75; Exh. E, Harley Dep. Tr., pgs. 16-17, 19-22, 35, 37, 84-85, 99-100.

## II.
## PLAINTIFF'S STATEMENT OF ADDITIONAL MATERIAL FACTS

1. Quantum is a Pennsylvania corporation. Defendant Martin was, at all pertinent times, President of Defendant Eagle Forum Education and Legal Defense Fund ("EFELDF"). Ian Northon was an attorney representing EFELDF in 2016 and 2017. (Plaintiff's Amended Complaint at ¶¶ 2-7, 14). Exh. A, Gerow Dep. Tr., 76:9-12; Exh. C, Martin Dep. Tr., pgs. 12-17; Exh. B, Declaration of Ian A. Northon.

2. Quantum Communications is a public relations and strategic communications firm engaged in the business of providing strategies and

solutions to customers seeking to strengthen their image, promote an agenda, or engage in a communications campaign throughout a region, state, or the nation. (Plaintiff's Amended Complaint at ¶11). Exh. A, Gerow Dep. Tr., pgs. 76-77.

3. An engagement agreement (the "Agreement") was signed by Ian Northon, of Roetzel & Andress, and Kevin Harley on September 22, 2016, and provided for Kevin Harley ("Harley"), Ed Rollins ("Rollins"), and Charlie Gerow ("Gerow"), the senior members at Quantum, to render services to assist Roetzel "in their representation of Eagle Forum by providing communication-consulting services to protect and enhance Eagle Forum's reputation." The agreement also included the EFELDF as a party purchasing/receiving the services of Quantum. Following the ordinary course of dealing in this business, the Agreement was executed with Roetzel & Andress, rather than directly with EFELDF, to preserve the attorney-client privilege. The Agreement provided for a monthly retainer of $20,000.00 that served as good and valuable consideration in exchange for Quantum's services. Id. at 14. Exh. C, Martin Dep. Tr., pg. 114; Exh. D, Exhibits to Deposition of Edward R. Martin, Jr., August 19, 2019, Exhibit 32. Exh. B, Declaration of Ian A. Northon.

4. On or about October 13, 2016, Ed Martin ("Martin"), President of the Phyllis Schlafly's Eagle Forum and the Eagle Forum Education and Legal Defense Fund, contacted and informed Quantum, that Ian Northon was not authorized to sign the Agreement, but that he was authorized and interested in pursuing the services that had been offered, and contractually settled, in the Agreement. (Plaintiff's Amended Complaint ¶ 16). Exh. A, Gerow Dep. Tr., pgs. 6-7; Exh. E, Harley Dep. Tr., pgs. 7-10.

5. Subsequently, during this litigation, Mr. Northon and his firm, Roetzel & Andress, have provided sworn statements that the agreement with Quantum was executed with the express authority and knowledge of EFELDF. Exh. B and F, Declarations of Ian A. Northon and Bruce Schrader.

6. Subsequent to that communication, on or before October 21, 2016, Martin agreed, on behalf of EFELDF, to the terms of the original Agreement and continued, along with Ian Northon, to direct the services provided by Quantum. He was frequently in contact with Quantum and repeatedly requested and directed services to be performed by Quantum. Martin remained fully aware of all services rendered by Quantum on behalf of EFELDF and made no objections to the services provided, nor

the invoices for said services, until payment was demanded in April of 2017. (Plaintiffs Amended Complaint at ¶ 17). Exh. A, Gerow Dep. Tr., pgs. 6-7, 66:3-11.

7. Pursuant to the Agreement, and under the direction of Martin, throughout the remainder of 2016 and January, February, March and April of 2017, QC provided proposed statements for Andy Schlafly, developed press releases concerning the litigation, designed a plan to modernize and digitize Phyllis Schlafly's legacy and movement, and created a detailed "strategic communications plan" for continued public relations including the creation of a Phyllis Schlafly video tribute for possible broadcasting, conducted extensive work on the video tribute, incurred considerable expenses ($17,228.32), and was responsive to numerous other requests by Defendant Martin. Exh. E, Harley Dep. Tr., pgs. 16-17 (communications with external contacts), 19-22 (meetings and events in promotion of Defendants), 35 (press statements), 37 (strategic plan for future public relations and communications of Defendants), 84-85 (litigation support), 99-100 (litigation support, communications and promotion of legacy for Defendants); Exh. A, Gerow Dep. Tr., 22:3-16, 20:5-25, pgs. 29-30, 73-75.

8. QC repeatedly communicated demands for payment for the valuable services QC provided for approximately 7 months, totaling over $130,000.00, and received several written and oral assurances from Martin that payment would be rendered shortly. Exh. C, Martin Dep. Tr., pgs. 77-80, 88-90, 90-92; Exh. D, Exhibits to Deposition of Edward R. Martin, Jr., August 19, 2019, Exhibits 1, 3, 4, 6, 7, 9.

9. Martin made numerous assurances to Plaintiff that payment was forthcoming in full. Exh. A, Gerow Dep. Tr., 14:8-10. On or about March 17, 2017, QC sent Martin wiring instructions confirming that QC would be paid in full, and Martin failed to dispute the invoice. Exh. C, Martin Dep. Tr., pgs. 73-76; Exh. D, Exhibits to Deposition of Edward R. Martin, Jr., August 19, 2019, Exhibit 3.

10. On numerous dates through March of 2017, Martin reassured QC that payment was forthcoming to QC in full for all services rendered and invoiced. Exh. C, Martin Dep. Tr., pgs. 77-80, 88-90, 90-92; Exh. D, Exhibits to Deposition of Edward R. Martin, Jr., August 19, 2019, Exhibits 4, 6, 7 and 9.

11. Each and every month of the contract, QC sent invoices for its services to Martin and the Treasurer John Schlafly. The invoices for October 2016 to January 2017, were also sent to Northon and Roetzel. At no

point prior to April of 2017, were any of the invoices questioned or disputed in anyway. In fact, payment was always assured to be forthcoming. Exh. A, Gerow Dep. Tr., 14:8-10; Exh. C, Martin Dep. Tr., pgs. 77-80, 88-90, 90-92; Exh. D, Exhibits to Deposition of Edward R. Martin, Jr., August 19, 2019, Exhibit 1.

Respectfully Submitted,

/s/ Charles Gerow_____

Charles Gerow, Esquire
Bar # 32888
4725 Charles Rd.
Mechanicsburg, Pa 17050
Phone # (717)-877-8194
*Counsel for Plaintiff Quantum Communications LTD*

## **CERTIFICATE OF SERVICE**

I, Charles Gerow, counsel for Plaintiff Quantum Communications, LTD, do certify that on October 12, 2020, I electronically filed the foregoing Response to Defendant's Statement of Fact using the CM/ECF system which results in service to all parties to this litigation.

/S/ Charles Gerow

Bar # 32888
4725 Charles Rd.
Mechanicsburg, Pa 17050
Phone # (717)-877-8194

*Counsel for Plaintiff Quantum Communications LTD*